# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **FREDRIC TYLER PELHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil No. 3:14-cv-1601** |
| ) | **Judge Aleta A. Trauger** |
| ) | |
| **UNIPRES U.S.A., INC.,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM & ORDER

On July 17, 2015, the court denied the Partial Motion for Summary Judgment filed by defendant Unipres U.S.A., Inc. ("Unipres") in an Order and accompanying Memorandum, familiarity with which is assumed. (*See* Docket Nos. 39, 40.) The court held, *inter alia*, that plaintiff Fredric Tyler Pelham ("Pelham") had "met his *prima facie* burden of establishing that his protected activity bore a causal connection to Unipres' adverse action." (*Id*. at p. 12.) In addition, the court held that "there was evidence sufficient to allow a jury to reasonably reject Unipres' explanation and conclude that Unipres failed to make a reasonably informed and considered decision sufficient to establish the applicability of the honest belief defense." (*Id*. at 16.) Unipres has filed a Motion for Reconsideration (Docket No. 41) and Memorandum in support thereof (Docket No. 42), to which Pelham has filed a Response in opposition (Docket No. 47). For the following reasons, the motion will be granted in part and denied in part.

**I.     Legal Standard**

While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and

1

Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (internal quotations marks and brackets omitted). "Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error of law or prevent manifest injustice." *Louisville/Jefferson Cnty., Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7.

## II. Analysis

Unipres first argues that the court made an error of law when it concluded that – in reliance in part on *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) – a causal link between a protected activity and an adverse action can be shown through temporal proximity. (*See* Docket No. 39 at pp. 10-11.) The thrust of Unipres' argument is that *Montell* is irrelevant and that FLSA-specific cases – which *Montell* is not – require some additional evidence beyond temporal proximity in order to establish a causal connection.

As an initial matter, the court acknowledges, as a sister court recently did in *Smith v. Grand Trunk Western Railroad Company*, that the Sixth Circuit has, in the past several years, issued what appear to be conflicting decisions as to whether temporal proximity alone is sufficient to establish a causal connection in retaliation cases, or whether some additional

2

circumstantial evidence is required. *See id.*, No. 13-14307, 2015 WL 3506318, at *10 (E.D. Mich., June 3, 2015). However, the Sixth Circuit in *Montell* clearly rejected the argument that temporal proximity alone was not be enough to establish causation in certain circumstances. In doing so, the court relied on *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), an ADEA case, in which the court had gone to great lengths to address what it considered to be misunderstandings of prior precedent and to harmonize lines of cases that had appeared to diverge concerning this subject.[1] The court expressly stated that temporal proximity alone can be enough to establish causation, where an adverse employment action occurs very close in time after an employer learns of a protected activity. *Montell*, 757 F.3d at 505. While *Montell* involved Kentucky Civil Rights Act retaliation claims analyzed under a Title VII framework, there is no explicit indication that *Montell's* statement of the law concerning temporal proximity was restricted – as Unipres suggests – to any one type of claim.[2] *See generally Montell*, *supra*. In particular, there is no indication that the *Mickey* or *Montell* courts deliberately intended to exclude FLSA retaliation cases from the scope of their holdings.[3]

---

[1] Notably, the *Mickey* opinion explained that a number of cases that had been misinterpreted to stand for the proposition that temporal proximity could not alone establish causation had actually only held that the temporal proximity alleged in the particular case was too attenuated. *Mickey*, 516 F.3d at 524 (noting that these cases were read too "expansively, and none squarely st[ood] for the proposition that temporal proximity alone may never show a causal connection").

[2] The discussion in *Mickey*, relied upon by *Montell*, was not limited to Title VII cases. *See Mickey*, 516 F.3d at 524 (citing *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation in retaliation action under the Federal Credit Union Act when "only 13 days" separated protected activity from adverse action).

[3] Unipres cites an opinion from this court for the general proposition that causation standards in retaliation cases are statute-specific. *See Doe v. Rutherford Cnty., Tenn., Bd. of Educ.*, 2014 WL 4080163, at *18 (M.D. Tenn. Aug. 18, 2014). This principle is unremarkable; any claim must be understood and evaluated in the context of the statute under which it is

3

The Sixth Circuit has reinforced its ruling in *Montell* in a Section 1983 First Amendment retaliation action by again citing approvingly to *Mickey* and stating that a "close temporal proximity between protected conduct and an adverse action may be sufficient on its own to raise an inference of causation." *See Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014) (citing *Mickey*, 516 F.3d at 525). The fact that *Benison* is not an ADEA case like *Mickey* or a Kentucky Civil Rights Act case like *Montell* is noteworthy and highlights that the Sixth Circuit considers *Mickey* and its progeny (one of which is *Montell*) alive and well, even when the underlying action may be of a different nature. *Benison* is consistent with *Doe*, 2014 WL 4080163, at *18 (in a Title IX case, finding plaintiffs had met their burden of establishing causation based on the temporal proximity between a family's complaints about a coach and the coach's decisions concerning a student's playing time, in reliance on *Montell's* holding that, "where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation") and *Russell*, 2014 WL 1515527 at *3 (in an FLSA case, observing that "[a] causal link can be shown through direct or

---

brought – including, *e.g.*, the claims discussed in *Mickey* and *Montell*. *Doe*, which concerned whether Title IX and Title VII claims were similar, however, is of no import regarding the specific question of the relationship of temporal proximity to causation.
  In addition, Unipres cites, as it did in its Motion for Summary Judgment briefing, to another opinion issued in this district that has described the FLSA causation standard as "but-for" or "close relationship." *See Russell v. Kloeckner Metals Corp.*, 2014 WL 1515527, *3 (M.D. Tenn. Apr. 18, 2014). However, Unipres fails to mention that, in the same opinion, that court stated that this very standard could be met by merely showing "direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment [action]." *Id.* Moreover, Unipres has not cited to any Sixth Circuit cases that have specified a heightened level of scrutiny beyond what is set forth in *Russell*. As such, these two cases do not establish that the court has made a clear error of law.

circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment [action]," and finding that plaintiff had established a triable issue of fact as to causation where, immediately after the plaintiff complained about having to attend lunch meetings "off the clock," the defendant changed a policy that negatively impacted the plaintiff and fired him within two months).[4]

The cases relied upon by Unipres do not change the court's analysis. The first of these, *Pettit v. Steppingstone Ctr. For the Potentially Gifted*, 429 F. App'x 524 (6th Cir. 2011), pre-dated *Montell*. Although *Pettit* is an FLSA case, for its authority on the issue of temporal proximity and causation, *Pettit* relied upon *Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010). *See Pettit*, 429 F. App'x at 533. Notably, *Spengler* was not an FLSA case, strongly undercutting Unipres' argument that only FLSA cases are relevant to the instant discussion. *See Spengler*, 516 F.3d at 495. Rather, *Spengler* was an ADEA case similar to the *Mickey* case, relied upon by the Sixth Circuit in its subsequent *Montell* decision. More importantly, several years later, when the defendant in *Montell* expressly relied upon *Spengler*, the Sixth Circuit rejected that argument, found that the defendant had "misconstrued both the facts and the law," and ruled that temporal proximity alone, in the absence of any other evidence, could, in certain circumstances, support a finding of causal connection in certain instances. *Montell*, 757 F.3d at 505-506. In short, Unipres has not convinced the court that *Pettit* supersedes the Sixth Circuit's

---

[4] *See also, e.g., Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that temporal proximity was "significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying [the plaintiff's] burden of demonstrating a *prima facie* case"); *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (finding temporal proximity of twenty-one days between the plaintiff's protected activity and termination "sufficient enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive").

subsequent ruling in *Montell*.

The second case relied upon by Unipres is the unpublished decision in *Evans v. Prof'l Transp., Inc.*, No. 14-6132, — F. App'x —, 2015 WL 3559186 (6th Cir. June 8, 2015). Like *Pettit*, *Evans* relies on only one prior decision and that was also not an FLSA case – rather, it was a Title VII retaliation action analyzed under the same rubric as that utilized in *Montell*. *See Evans*, 2015 WL 3559186 at *5 (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002)). This again undercuts Unipres' argument that FLSA cases should be insulated from the application of the principles discussed in *Montell*. Unipres notes that the *Evans* court observed that "[t]emporal proximity, when coupled with other facts, may be sufficient in certain cases to establish the causal-connection prong of a *prima facie* case of retaliation, but we have *generally* declined to consider temporal proximity to establish the employer's-knowledge prong." *Id.* at *6 (emphasis added). This statement does not, however, establish that the court has *universally* declined to do so. The court believes a fair interpretation of this statement is that the court looks askance at temporal proximity alone unless it is extremely close in time; this statement is consonant with prior caselaw that has rejected temporal proximity that is too attenuated. Here, Pelham was terminated extremely close in time to his complaints. Even if, in *Evans,* the Sixth Circuit were stating a general reluctance against considering temporal proximity alone to be sufficient, the court concludes that a finding that this is one of the small number of cases in which it was sufficient is not a clear error of law or manifestly unjust.

Additionally, Unipres' motion ignores important parts of the court's summary judgment Memorandum. After holding that Pelham had demonstrated temporal proximity, the court went on to explain that Pelham had *also* adduced additional circumstantial evidence, in keeping with the *Pettit* decision now relied upon by Unipres. The court explained that, "[i]f temporal

proximity is lacking in strength, the Sixth Circuit has stated that combining it with other evidence of retaliatory conduct is enough to establish a causal connection." (Docket No. 39 at pp. 11) (citations omitted). The court then found that Pelham had met this standard as well:

> Here, Pelham complained about his unpaid wages every day for two weeks and – most importantly – immediately before he was assigned to work an unfamiliar task at the Nissan Facility that gave rise to the purported basis for Unipres' adverse action against him. Given the immediate temporal connection between (1) Pelham's complaints, (2) Unipres' suspension of Pelham mere hours after the Nissan Facility shift at issue, and (3) Unipres' termination of Pelham shortly thereafter, Pelham has sufficiently established a case that his complaints had a direct bearing on his termination. Pelham's testimony concerning (1) Simpson's growing anger towards only him, (2) Brown's comments echoing the same, and (3) Pelham's sudden assignment to a new line position, without any information as to the identity of his supervisors or the proper mechanisms for taking breaks, provides additional evidence of disparate treatment that supports Pelham's case for causation. *See, e.g.*, *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 533-34 (6th Cir. 2011) (citing *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 105-06 (6th Cir. 2005) (noting that an example of sufficient additional evidence of causation can be disparate treatment in various forms)).

(Docket No. 39 at pp. 11-12.) Accordingly, the court specifically found that, even if additional evidence were necessary to support Pelham's case for causation, Pelham had met his burden in that regard by coupling his allegations of temporal proximity with "additional evidence of disparate treatment" so as to defeat summary judgment and proceed to trial. Unipres' partial motion for summary judgment was, therefore, appropriately denied on this ground as well.

Unipres also contends that the court committed an error of law in finding – based on the fact that Pelham had adduced evidence sufficient to allow a jury to reasonably reject Unipres' explanation and conclude that Unipres failed to make a reasonably informed and considered decision in terminating him – that Unipres did not enjoy the protection of the "honest belief"

7

doctrine. (Docket No. 39 at pp. 14-15.) In so holding, the court wrote:

> But Unipres also does not dispute the fact that, at 3:00 a.m. on July 17, 2017, Pelham's drill broke, and he was in the process of securing replacement equipment from nearby Nissan employees. *See* RAMF No. 23. This is an alternative, equally plausible reason for the Nissan line to have gone down for six minutes around 3:00 a.m., and it is not attributable to Pelham's delinquency. This admission leads to other questions of disputed fact concerning the events of that morning, including whether what occurred at 3:00 a.m. was "authorized" or not, and raises factual issues about the veracity of Harris's statement. Stated differently, if Unipres does not dispute that Pelham's drill broke at 3:00 a.m., this raises a triable question of fact as to whether Unipres reasonably relied on the particularized facts of an adequate investigation in reaching an honest belief that Pelham was acting in an "unauthorized" manner at 3:00 a.m. and thus deserved to be terminated for that reason. This question as to the factual predicate of Unipres' honest belief is enhanced by the fact that Unipres also acknowledges it did not even seek Pelham's side of the story. *See* RAMF No. 28.

(*Id*. at p. 16.) First, Unipres argues that the court's language "does not dispute" and "acknowledges" is an improper "overstatement" because Unipres "declared that both these issues were undisputed for purposes of [the Motion for Summary Judgment] only." (Docket No. 42 at p. 7.) The court finds this argument puzzling; the court's ruling was for the purposes of summary judgment only as well. To be clear, in its response to Pelham's Statement of Additional Material Facts, Unipres *did not dispute* Pelham's factual assertion that, at approximately 3:00 a.m., Pelham's drill "malfunctioned, lost power and had to be replaced" and Pelham was in the process of securing a replacement drill. (Docket No. 36 at p. 7, No. 23.) Unipres is bound by the position it took for purposes of the summary judgment ruling.

Finally, Unipres contends that the court misunderstood that Unipres must be absolved under the honest belief doctrine, because "[Pelham] admit[ted] that he met with Unipres' Human Resources presence in Smyrna, Ms. Owens[,]" following the shutdown of the Nissan line but did

8

not speak with her about the drill malfunction during that meeting. (Docket No. 42 at p. 8.) Unipres argues that, if what Pelham says is true, "then Unipres did not know about [Pelham's] side of story at the time that it terminated him, and, therefore, Unipres' honest belief is "unblemished." (*Id.*)

While Pelham admits that he accompanied Ms. Owens to her office on July 17, 2014, after waiting for hours in the parking lot, there are two additional facts of importance that Unipres cannot avoid: (1) "[Pelham] asked Ms. Owens if she would at least get his side of the story, and she assured him there would be a time and place for that," and neither (2) "Ms. Owens nor [Unipres] ever asked [Pelham] for his explanation about what happened at work on July 17, 2014." (Docket No. 36 at pp. 89, No. 28.) Unipres *did not dispute* either of these factual assertions at summary judgment. Where a decision-maker's "own testimony shows that he did not ascertain or know all the relevant facts, and that he did not think it important to know such facts before terminating" a plaintiff's employment, "the honest-belief defense does not apply." *Moffat v. Wal-Mart Stores, Inc.*, — F. App'x —, 2015 WL 4880135, \*6 (6th Cir. Aug. 17, 2015) (reversing district court and finding issue of material fact existed as to pretext where decision-maker failed to conduct basic fact-finding) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-08 (6th Cir. 1998) (finding that, if the plaintiff can show that the employer's decisional process was "unworthy of credence" by producing "sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action," then the honest-belief defense does not apply)). Here, the undisputed record reflects that Unipres did not find it important to get Pelham's "side of the story" before terminating him, even though Pelham actually *met* with Ms. Owens and gave Unipres the very opportunity to do so. In

9

sum, Unipres has not convinced the court that its decision regarding Unipres' honest belief defense was made in clear error or represents a manifest injustice.

### III. Collateral Requests

Unipres requests that the court amend the description of the number and location of Unipres' employees contained in the summary judgment Memorandum. This is a non-material fact (regarding which Pelham has no position), but the court will grant the request. The second sentence on page 2 of the court's summary judgment Memorandum will therefore be amended as follows: "Most of Unipres' approximately 1,350 employees work in Portland, Tennessee, although approximately 188 work in a manufacturing facility in Smyrna, Tennessee, in or near Nissan North America, Inc.'s ("Nissan") manufacturing plant. Specifically, in June 2014, 99 Unipres employees worked regularly inside the Nissan plant ("Nissan Facility") itself, while 89 Unipres employees worked nearby in a facility called the Nissan Supplier Park ("NSP")."

Unipres has also taken the unusual step of requesting that the court revise its summary judgment Memorandum is several other ways. For example, Unipres desires the court to change the manner in which it has characterized Unipres' decision to not dispute certain facts at summary judgment (*e.g.*, "does not dispute", "acknowledges"), asserting that the court has made a number of "misstatements" regarding what Unipres has or has not agreed is correct. These requests are highly curious, and suggest that Unipres believes the court either is not familiar with the record or does not understand the difference between the record for purposes of summary judgment and trial. Remarkably, Unipres even wants the court to insert two paragraphs into its opinion explaining the difference between summary judgment and trial. (Docket No. 42 at p. 11.) These matters are immaterial to reconsideration of the motion for summary judgment and an

inappropriate use of the instant motion practice. The court assures the parties that it understands that facts that are "undisputed for the purposes of summary judgment" may well be disputed at trial. The court does not find its (or any other) summary judgment Memorandum confusing in this regard. Accordingly, the court rejects all other suggested changes to the court's summary judgment Memorandum that Unipres requests "for additional clarity." (*See* Docket No. 42 at pp. 10-11.)

### CONCLUSION

Unipres' Motion for Reconsideration (Docket No. 41) **IS GRANTED IN PART AND DENIED IN PART**.

Enter this 8th day of September, 2015.

_____
ALETA A. TRAUGER
United States District Judge